USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/9/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In the matter of the application of REUTERS
AMERICA LLC,

                                    Plaintiff,

                      -against-

For a judgment staying the arbitration commenced
by NEWSPAPER GUILD OF NEW YORK,
LOCAL 3

                                  Defendant.

In the matter of the application of REUTERS
AMERICA LLC,

                                  Plaintiff,

                      -against-

For a Judgment Staying the Arbitration Commenced
by NEWSPAPER GUILD OF NEW YORK,
LOCAL 3

                                  Defendant.

-----------------------------------------------------------------x

10 Civ. 0273 (SHS)

10 Civ. 0639 (SHS)

<u>OPINION & ORDER</u>

SIDNEY H. STEIN, U.S.D.J.

      On January 13, 2010, petitioner Reuters America LLC filed a petition to stay an arbitration with the Newspaper Guild before the American Arbitration Association ("AAA"), Case No. 13 3000315109. (*See* Petition to Stay Arbitration [Dkt # 1] 10 Civ. 273.) On January 27 Reuters filed another petition to stay a separate arbitration before the AAA, Case No. 13 3000008510. (*See* Petition to Stay Arbitration [Dkt # 1] 10 Civ. 639.) On March 2, 2010, this

1

Court heard argument on both petitions and informed the parties of its decision. This opinion sets forth the Court's reasoning in fuller measure.

## I. BACKGROUND

Reuters America LLC seeks to stay two separate arbitrations pending before the AAA. One arbitration relates to the failure of Reuters to deduct Guild dues from employees' paychecks (the "dues check-off" arbitration) and the other involves a grievance by a Reuters employee and Guild member—Anthony D'Antonio. Reuters maintains that it is no longer obligated to arbitrate either of those disputes because the Collective Bargaining Agreement ("CBA") between it and the Guild expired on February 28, 2009, and any obligation it had to arbitrate those disputes ended at that time. The Guild, however, contends that Article XXII, Section 2(e) of the CBA ("Article XXII-2(e)")—what the Guild calls the "evergreen clause"— keeps all the terms of the contract, including the obligations to arbitrate and to deduct Guild dues from employees' paychecks, in effect until the parties enter into a new CBA or bargain to an impasse. The Guild argues that Article XXII-2(e) keeps in effect the original arbitration clause and dues check-off provision, and that the arbitration clause does not exclude from arbitration disputes over the interpretation of Article XXII-2(e). Accordingly, the Guild maintains that an arbitrator, not this Court, should determine the validity of the evergreen clause.

Article XXII-2(e) addresses the "duration and renewal" of the CBA as follows:

> The terms and conditions of this Agreement shall remain in effect during such negotiations as required by applicable law.

(Ex. 1 to Affidavit of Hanan Kolko ("Kolko Aff.") at 63.) Although the term "negotiations" is not defined in Article XXII, based on its context in the "Duration and Renewal" section of the CBA, that term refers to the period in which the Guild and Reuters are negotiating for a new CBA but before a new CBA becomes effective. The parties do not dispute that the language "as required by law" did not exist in the CBA in force between the years of 1994-1998. (*See* Ex. 1 to

2

Declaration of Glen Russo ("Russo Decl.").) The additional language was added to the subsequent CBA, which expired on February 28, 2003. (Ex. 2 to Russo Decl.) Defendants claim that Article XXII-2(e) is still an evergreen clause, despite the additional language. Reuters disagrees, claiming that it never intended the language in Article XXII to be interpreted as an evergreen clause, and that this is why they added the additional language to that clause in later contracts. Reuters maintains that the collective bargaining history between the parties supports its position. (Russo Decl. ¶ 4.)

Reuters also argues that it no longer has an obligation to arbitrate either of the underlying grievances at issue here because both matters concern "renewal of the Agreement" and should therefore be excluded from arbitration under the plain language of the CBA. The arbitration clause in the CBA is found in Article XVII, Section 2(a) and provides as follows:

> Section 2 – Arbitration Procedure:
>
> (a) If a grievance arising from the interpretation or application of the terms of this Agreement (*except as to renewal of the Agreement*) is not disposed of . . . as described in Section 1 above [*i.e.*, Grievance Procedure], the grievance may be referred to arbitration by the grieving party . . . .

(Ex. 1 to Kolko Aff. at 52.) (emphasis added).

## II. DISCUSSION

### A. Arbitrability Standard

"The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quotation and citation omitted). Addressing facts similar to those presented in this action, the U.S. Court of Appeals for the Second Circuit noted that "[t]he case law is clear . . . that unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to

arbitrate is to be decided by the court, not the arbitrator." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (quotation and citations omitted).

Grievances that arise after the expiration of a valid bargaining agreement are not truly disputes "over what an arbitration clause provides"; rather, they are disputes "over the interpretation of other clauses of the collective bargaining agreement, *e.g.*, termination clauses, or in [this] case an evergreen clause." *Abram Landau Real Estate v. Bevona*, 23 F.3d 69, 73 (2d Cir. 1997). Specifically,

> [W]here the agreement contains a sweeping arbitration clause covering all disputes involving the meaning of terms and provisions of the agreement and where the arbitration clause does not expressly exclude disputes over the termination provision or the "evergreen" clause, disputes over these matters should be submitted to arbitration.

*Id.*; *see also CPR v. Spray*, 187 F.3d 245, 256 (2d Cir. 1999).

Thus, the issue for resolution becomes whether the parties agreed to arbitrate the dispute over the meaning of the purported evergreen clause, and it is the Court's task to make that determination.

B. Analysis

The parties agreed at oral argument on March 2, 2010 that had the D'Antonio and the dues check-off matters occurred prior to February 28, 2009—the expiration date of the CBA—each dispute would be arbitrable pursuant to the arbitration clause of the CBA. (Transcript of Oral Argument at 3-4.)

In order to determine "whether an arbitrator or a court gets to interpret a termination clause or evergreen clause, the dispositive question is whether the parties have agreed that an arbitrator should decide that question." *Landau*, 23 F.3d at 73. The arbitration clause in the CBA is a central part of the grievance procedure employed by Reuters and the Guild to resolve disputes concerning "the interpretation or application of the terms of this Agreement [the CBA]." (Ex. 1 to

4

Kolko Aff. at 52.) The Court finds the plain language of the arbitration clause to be sufficiently "sweeping" to include the parties' dispute concerning the validity of Article XXII-2(e)—the evergreen clause. *Abram Landau*, 123 F.3d at 73. Moreover, the clause "does not expressly exclude disputes over the termination provision or the evergreen clause." *Id.* (internal quotations marks and citations omitted); *see also Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000) (finding similar language to constitute a broad arbitration clause); *Costco Wholesale Corp. v. Int'l bhd. of Teamsters, Local 210*, No. 00 Civ. 7945, 2001 U.S. Dist. Lexis 1980, at *11 (S.D.N.Y. Feb. 28, 2001) (same).

Although a provision in the CBA provides that an arbitrator does not have the power to determine a grievance having to do with "renewal of the Agreement," this clause does not prevent an arbitrator from interpreting the existing clauses in Article XXII—the article covering "duration and renewal" provisions. *Id.* Presumably, the parenthetical limitation applies to (1) new provisions which may be incorporated into the agreement at the time of an extension or renewal of the agreement or when a new agreement is executed, *id.*, or (2) if there is an issue as to whether the contract has been renewed at all. The parenthetical language does not mean that Reuters simply no longer has any obligation to arbitrate after the expiration of the CBA

The "as required by law" language added later to the evergreen clause does not alter the above analysis. Rueters is correct that, unlike some provisions of a CBA, neither dues check-off provisions nor arbitration clauses continue to apply as a matter of law after the expiration of a collective bargaining agreement. *See Litton*, 501 U.S. at 198-201. Here, the Court finds that the plain language of this CBA dictates that these disputes do not relate to "renewal of the Agreement," and therefore the disputes over the meaning of the evergreen clause are still arbitrable as long as negotiations are taking place and the parties have not bargained to an impasse.

5

### III. CONCLUSION

For the reasons set forth above, Reuters' petitions to stay the arbitrations involving Anthony D'Antonio [Dkt #1, 10 Civ. 273] and the failure to collect union dues [Dkt #1, 10 Civ. 639] are both denied. This Court need not and does not address Respondents' other arguments concerning application of the Norris LaGuardia Act because it denies the petitions to stay the arbitrations on other grounds.

Dated:  New York, New York
         March 9, 2010

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.